IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**JEFFREY CUMMINS**                                                          **PLAINTIFF**

**vs.**                         **CIVIL ACTION NO. 2:11CV38-SAA**

**MICHAEL ASTRUE,**
**Commissioner of Social Security**                         **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Jeffrey Cummins for a period of disability and disability insurance benefits under Section 216(I) and 223 of the Social Security Act and for supplemental security income payments under Section 1614(a)(3) of the Act. Plaintiff protectively applied for benefits on March 5, 2007, alleging that he became disabled on June 1, 2006 due to COPD, vision problems, depression/anxiety, low back pain, and left leg pain. Docket 6, p. 140, 184. He later amended his onset date to November 10, 2006 (Docket 6, p. 44), and amended it yet again to March 1, 2007. Docket 6, p. 246.

The plaintiff's claim was denied initially and on reconsideration. *Id.* at 72-75; 79-89. Plaintiff timely requested a hearing on November 28, 2007 (*Id.* at 90) and testified, with the assistance of counsel, at the administrative hearing that was held over two years later on December 16, 2009. Docket 6, pp. 37-70. The ALJ issued an unfavorable decision on February 25, 2010. *Id.* at 14-30. The Appeals Council denied plaintiff's request for a review on December 27, 2010. *Id.* at 7-11. The plaintiff timely filed the instant appeal from the Commissioner's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

The plaintiff was born on April 25, 1979 and was twenty-seven years old at the time of his application. Docket 10, p. 2. He has an eighth grade education.[1] *Id.* His past relevant work was as a painter. Docket 6, p. 42. He contends that he became disabled on March 1, 2007 as a result of COPD, vision problems, depression/anxiety, low back pain, and left leg pain. Docket 6, p. 246. On appeal, plaintiff claims that additional medical issues including obesity, amputation of two fingers, chronic pain syndrome, lumbago, muscle spasms, and hypertension contribute to his alleged disability. Docket 10, p. 3. The ALJ rejected his claims of disability, concluding that even though the plaintiff has severe impairments and cannot perform his past relevant work, there nevertheless are jobs which exist in significant numbers in the national economy which plaintiff can perform. Docket 6, p.29. As a consequence, he found plaintiff was not disabled. *Id.* at 30.

Plaintiff claims that the ALJ erred by not properly considering all of plaintiff's impairments; not considering whether plaintiff's pulmonary impairment met or medically equaled Listing 3.02;[2] not affording proper weight to the opinions of plaintiff's treating physician and the agency consulting physicians; and not finding plaintiff disabled in light of

---

[1] The record is unclear whether plaintiff received additional education in the form of home schooling after eighth grade, but it is clear that he does not have a GED or the equivalent of a high school education.

[2] 20 C.F.R. Part 404, Subpart P, App. 1, §3.02A Chronic pulmonary insufficiency.

testimony by a vocational expert [VE] in response to a hypothetical that was supported by the medical evidence. Docket 10, pp.1-2.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[5] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[6] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[7] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[8] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[3]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[4]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[6]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[7]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

past work experience, that he is capable of performing other work.[9] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[10]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient

---

[9]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[10]*Muse*, 925 F.2d at 789.

[11]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since his alleged onset date, June 1, 2006. Docket 6, p. 19. At step two, the ALJ determined that plaintiff suffered from "severe" impairments, namely degenerative disc disease and depression, and at step three found that his severe impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 26. Based upon testimony by the VE at the hearing, and after considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> lift 20 pounds occasionally and frequently; walk/stand up to two hours in an eight-hour workday; and sit for six hours in an eight hour workday. The claimant can never climb ladders, ropes or scaffolds and can only occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. He can maintain attention and concentration for two hour periods at a time as a result of medication side effects and his mental impairment.

*Id.* at 26. In light of testimony by the VE, the ALJ found plaintiff incapable of performing his past relevant work at step four. *Id.* at 28. Last, at step five, the ALJ concluded that plaintiff was capable of performing a significant number of jobs in the national economy, and therefore was not disabled. *Id.* at 24-25.

**A. Whether the ALJ erred in considering all of plaintiff's impairments at Steps 2 and 3.**

Plaintiff contends the ALJ erred by failing to consider properly all of his impairments at

5

Step 2. The ALJ found that plaintiff's degenerative disc disease and depression were severe, but held that his remaining impairments were not. Docket 10, p. 4. Despite plaintiff's claim of error, however, the ALJ did properly consider all of his impairments. In fact, the ALJ performed a thorough analysis of each of the alleged impairments. For instance, with regard to plaintiff's COPD, the ALJ noted that despite the opinions of Dr. Fleischhauer that plaintiff should avoid cigarette smoke, the plaintiff continued to smoke as much as a pack of cigarettes per day. Additionally, the ALJ noted that "[w]hile Dr. Fleishhauer indicated that the claimant could not sit for even two hours in an eight-hour workday, the claimant testified that he regularly takes an eight-hour bus/car ride to Kansas." Docket 6. p. 20.

Further, the ALJ noted that Dr. Fleishhauer's opinions were contradicted by the results of x-rays taken on January 16, 2007 – one month before Dr. Fleishhauer stated his opinions – and on June 6, 2007 – five months after he did so. The June 6, 2007 x-rays of plaintiff's chest returned normal results. *Id.* at 21. The ALJ noted that even as late as September 5, 2008, x-rays of plaintiff's chest revealed no acute cardiopulmonary abnormalities. *Id.* at 23. In fact, the ALJ performed a very thorough analysis of plaintiff's medical treatment concerning his alleged COPD, noting that "during the hearing, [plaintiff] conceded that his COPD symptoms are under control for the most part." *Id.* at 24. She went on to hold that "diagnostic and examination findings, as well as the claimant's own reports, support the conclusion that COPD does not result in more than a minimal effect on the claimant's physical ability and is therefore deemed a nonsevere impairment." *Id.* at 25. Because the ALJ properly determined that plaintiff's COPD and alleged pulmonary impairments were not severe, she was not required to consider whether plaintiff's pulmonary impairment met Listing 3.02A. Plaintiff's assertion that his COPD

"appeared to meet" the Listing 3.02A criteria is insufficient for this court to find error. Plaintiff has presented no evidence, and the court cannot locate any in the record, to substantiate a finding that plaintiff's COPD meets the criteria for Listing 3.02A. A simple assertion that an impairment appears to meet a listing is insufficient to meet plaintiff's burden of showing that he is disabled through the first four steps of the analysis as required by *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *see also Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (holding that plaintiff bears burden of showing that his impairment meets all of the listing's specified medical criteria). As plaintiff failed to provide any evidence that his COPD actually meets the Listing 3.02A requirements, this argument is without merit.

The ALJ properly considered each of plaintiff's many alleged impairments, including his depression and panic disorder. She considered all four broad functional areas required in the disability regulations 20 C.F.R. §§ 404.1520a(c), 416.920a(c), also known as "paragraph B" in evaluating the severity of plaintiff's mental disorders. Docket 6, pp. 25-26. She noted that he had mild restriction in his ability to perform daily living activities in that he is able to take care of a relative confined to a wheelchair, travel out of state to help care for a relative, and play video games, fish and talk on a ham radio. *Id.* at 25. The ALJ also noted that plaintiff has mild restriction in his ability to maintain social functioning, moderate difficulties in his ability to maintain concentration, persistence or pace, and has not experienced any episodes of decompensation. *Id.* As a result of this evaluation, the ALJ found plaintiff's mental impairments to be non-severe.

The ALJ even continued and evaluated the plaintiff's possible impairment of borderline intellectual functioning even though plaintiff had not alleged this impairment. *Id.* at 26. The

ALJ evaluated plaintiff's education, work history and the report of Bonnie Tubbs, M.Ed., before concluding that plaintiff did not suffer from the medically determinable impairment of borderline intellectual functioning. *Id.*

Plaintiff's argument that the ALJ did not properly consider all of plaintiff's impairments is without merit. The ALJ thoroughly and properly analyzed each alleged impairment and compared the record evidence to each listing, but ultimately found that the record evidence failed to demonstrate any listing. The ALJ properly addressed the plaintiff's ability to perform sustained work activities and detailed record evidence to support her conclusions. Therefore, this argument is without merit.

**B. Whether the ALJ erred by not affording proper weight to plaintiff's treating physicians**.

Plaintiff argues on appeal that the ALJ did not perform a proper analysis before discounting his treating physicians' opinions. He further alleges that the ALJ's RFC and her resulting ultimate decision are unsupported by substantial evidence because she failed to give his treating physician's opinions proper weight and chose instead to afford significant weight to a consultative examining physician and two state agency reviewing physicians. Docket 10, p. 1. The Commissioner responds by citing *Newton v. Apfel*[13] for the proposition that the ALJ "may reject a physician's opinion if it is either (1) not supported by medical evidence, or (2) inconsistent with other substantial evidence in the record." The Commissioner also asserts that because plaintiff's treating physicians were not specialists, the ALJ was allowed to weigh the physician reports and give some assessments reduced weight. Docket 14, p. 17.

---

[13]*Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

In support of his claim of error, plaintiff relies upon a Medical Source Statement ("MSS") from Dr. Thomas Fleischhauer dated February 14, 2007. Although Dr. Fleischhauer states that he had begun treating plaintiff one month before, on January 15, 2007, there are no medical records to substantiate that he treated plaintiff other than during the three-day period when plaintiff was hospitalized at Tri-Lakes Medical Center for pneumonia and hypoxia in January, 2007. Docket 6, p. 280-301. The Medical Source Statement concerned plaintiff's pulmonary impairment and indicated that he experienced had shortness of breath, rhonchi, episodic pneumonia, fatigue, chest tightness, acute asthma, coughing, and bronchitis, and that his symptoms were severe enough to seriously interfere frequently with Mr. Cummins' attention and concentration. Docket 6, p. 305-09. Dr. Fleischhauer further opined that plaintiff could sit and stand/ walk for less than two hours in an eight hour work day, occasionally lift and carry up to 20 pounds, never stoop or crouch, and should avoid all exposure to extreme heat and cold, soldering fluxes, cigarette smoke, avoid even moderate exposure to chemicals, and concentrated exposure to high humidity, solvents/cleaners, perfumes and fumes, odors, dusts, and gases. According to Dr. Fleischhauer, plaintiff's impairments are likely to produce good day s and bad days that will likely result in plaintiff missing work more than four times a month. Dr. Fleischhauer further noted that "[f]or proper evaluation, I feel like this patient needs at least routine screening PFT's done, and evaluation by an orthopedic surgeon for chronic back pain. An evaluation by a pulmonary (lung) specialist would also be helpful." Docket 6, p. 309.

The ALJ found that "Dr. Fleischhauer is a treating source but his opinion is not consistent with the record evidence." *Id.* at 20. The only time Dr. Fleischhauer saw plaintiff was during this single hospitalization for pneumonia, during which his lung capacity/function certainly

would have been impaired. The and x-rays taken five months after this hospitalization confirm the ALJ's finding that plaintiff's pulmonary impairments are not severe. Docket 6, p. 364 Spirometry tests conducted on July 24, 2007 revealed mild and normal results. Despite plaintiff's assertion that Dr. Grote's Updated MSS confirms the opinions previously expressed by Dr. Fleishhauer, there is similarly no objective evidence to confirm Dr. Grote's opinions. Both the original MSS from Dr. Fleishhauer and the Updated MMS from Dr. Grote are inconsistent with Dr. Grote's own records. It does not appear that Dr. Grote performed any clinical or other objective tests on plaintiff which would confirm the limitations expressed, and the records from many of the visits do not even mention plaintiff's COPD or related complaints.[14] Therefore, the ALJ's decision to give Drs. Fleishhauer and Grote limited weight

---

[14]Interestingly, plaintiff travels monthly to Kansas to see Dr. Grote, who regularly prescribes extremely strong pain medications such as Oxycontin, along with other painkillers. The 2011 Physician's Desk Reference pp. 2879-2886, says, with respect to Oxycontin:

> May cause respiratory depression, use with extreme caution in patients at risk of respiratory depression, elderly and debilitated patients
> . . . .
> Decreased respiratory drive resulting in respiratory depression is the chief hazard from the use or abuse of opioid agonists, including OxyContin. The risk of opioid-induced respiratory depression is increased, for example, in elderly [see Use In Specific Populations (8.5)] or debilitated patients; . . . .
>
> Use OxyContin with extreme caution in patients with any of the following:
> •significant chronic obstructive pulmonary disease or cor pulmonale
> •other risk of substantially decreased respiratory reserve
> •hypoxia
> •hypercapnia
> •pre-existing respiratory depression.

This warning would seem, in fact, to caution *against* Dr. Grote's prescribing this particular drug, which the PDR describes as "an opioid agonist and a Schedule II controlled substance with an abuse liability similar to morphine."

does not constitute error.

As to the mental status examination conducted on plaintiff was by Bonnie M. Tubbs, M.Ed., at the request of the ALJ, plaintiff asserts that the ALJ erred by not affording these opinions greater weight. Ms. Tubbs submitted a Medical Source Statement in which she assessed the claimant with borderline intellectual functioning, major depressive disorder, panic disorder without agoraphobia, alcohol dependence, COPD and chronic back pain. Docket 6, pp. 431-41. She found he has a poor ability to deal with work stresses and function independently, and a fair or better ability in every other area assessed. *Id.* The ALJ assigned little weight to Ms. Tubbs opinions because Tubbs noted plaintiff was poorly motivated. Docket 6, p. 22. In addition to the fact that plaintiff failed to put forth effort during portions of Ms. Tubbs' evaluation, plaintiff was not honest during his hearing testimony concerning his panic attacks. Even plaintiff's counsel had to apologize to the ALJ for testifying falsely and direct plaintiff to apologize to the ALJ for the misleading testimony and to testify truthfully concerning his use of cigarettes and the frequency and duration of his panic attacks. These clear instances of plaintiff's "lack of candor," in combination with his lack of motivation during his mental health examination, are sufficient support for the ALJ's decision to afford plaintiff's testimony and Ms. Tubbs's opinions little weight. The Fifth Circuit has held an ALJ's credibility determination is entitled to considerable deference as the ALJ is in the best position to assess the plaintiff's credibility during his first hand examination of plaintiff. *Harrell v. Bowen*, 762 F.2d 471 (5th Cir. 1988); *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994). Plaintiff's argument that the ALJ gave insufficient weight to the opinions of plaintiff's treating and examining physicians is without merit.

**C. Whether the ALJ erred by not find plaintiff disabled at Step 5 in Response to the VE testimony.**

In a very brief two sentence paragraph, plaintiff asserts that the proper hypothetical posed to the VE was based upon the limitations found by Drs. Grote and Fleischhauer, in response to which the VE testified that plaintiff could not perform any work on a regular and sustained basis.[15] Docket 6, p. 18. However, an ALJ need only incorporate into a hypothetical question those claimed limitations "supported by the evidence and recognized by the ALJ."[16] As discussed above, the ALJ properly discounted the opinions of both Drs. Grote and Fleishhauer, and she consequently was not required to incorporate into her RFC or the hypothetical to the VE the limitations placed on plaintiff by either physician. Plaintiff's argument on this point is without merit.

## IV. CONCLUSION

After a review of the evidence presented to the ALJ, this court is of the opinion that the ALJ's opinion was supported by substantial evidence and must be affirmed. The ALJ thoroughly analyzed each of plaintiff's alleged impairments, even those for which no support appeared in the record. She properly weighed the evidence from plaintiff's treating physicians and evaluated plaintiff's impairments under all of the necessary steps. The ALJ's conclusion

---

[15]Plaintiff notes that the ALJ's hypothetical to the VE included the ability to "sit two hours in an eight-hour day" and "standing or walk six hours in an eight hour day" while the RFC contained the limitation to "walk/stand up to two hours" and "sit for six hours in an eight hour workday." After reviewing the record in conjunction with the ALJ's findings, the court is of the opinion that this was clearly a typographical error and the ALJ intended for the RFC and the hypothetical to reflect identical limitations.

[16]*Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).

that the physical and mental impairments alleged during the administrative process do not constitute a disability is clearly supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

    SO ORDERED, this, the 16th day of November, 2011.


      /s/ S. Allan Alexander
    UNITED STATES MAGISTRATE JUDGE